1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOURDES GARCIA-GARCIA, )<br><br>Petitioner, )<br><br>v. )<br><br>MICHAEL CHERTOFF, et al., )<br><br>Respondents. )<br>_____ ) | 1:07-CV-01057 OWW SMS HC<br><br><br>**FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS** |

**INTRODUCTION**

Petitioner is being detained by the Bureau of Immigration and Customs Enforcement ("ICE") of the Department of Homeland Security following entry of an order of removal from the United States. Petitioner is proceeding with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. Petitioner is represented in this action by Martin R. Guajardo, Esq. In the petition filed on July 21, 2007, Petitioner claims Respondent has unlawfully restrained her of her liberty in violation of the Immigration and Nationality Act and the Due Process Clause of the Fifth Amendment to the United States Constitution.

**FACTUAL BACKGROUND**

Petitioner is a native and citizen of Mexico who is currently being detained at the Kern County Lerdo Detention Facility. See Petition at ¶¶ 1, 5. On April 6, 2006, Petitioner was ordered

1   deported to Mexico by an Immigration Judge. See Petition at ¶8. Petitioner pursued an appeal to the

2   Board of Immigration Appeals, but the appeal was dismissed on December 26, 2006. See Petition at

3   ¶8. Petitioner then sought relief by filing a petition for review with the Ninth Circuit Court of

4   Appeals. Garcia-Garcia, et al., v. Mukasey, docket no. 07-70323. Petitioner also requested a stay of

5   removal which was granted and went into effect on January 25, 2007. Id.

6          On January 30, 2007, Petitioner was taken into custody by ICE. See Petition at ¶9. On

7   April 30, 2007, ICE conducted a post-order custody review, whereupon Petitioner was informed she

8   would remain in custody. See Petition at ¶17. Petitioner has been in custody since then. Id.

9                                    **DISCUSSION**

10  I.  Jurisdiction.

11         Habeas corpus relief is appropriate when a person "is in custody in violation of the

12  Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c). Habeas corpus

13  proceedings pursuant to § 2241 remain available as a forum for statutory and constitutional

14  challenges to the authority of the Attorney General to order detention of an alien; in such a

15  proceeding, the petitioner is not seeking review of the Attorney General's exercise of discretion, but

16  rather is challenging the extent of the authority to detain under the statute, which is not a matter of

17  discretion.  Zadvydas v. Davis, 533 U.S. 678, 688 (2001); Magana Pizano v. Immigration and

18  Naturalization Service, 200 F.3d 603, 608-09 (9th Cir. 1999); Nadarajah v. Gonzales, 443 F.3d 1069,

19  1075 (9th Cir.2006).  The REAL ID Act of 2005, Pub.L. No. 109-13, Div. B., 119 Stat. 231 does not

20  divest the Court of jurisdiction because the Act was "not intended to 'preclude habeas review over

21  challenges to detention that are independent of challenges to removal orders.'" Hernandez v.

22  Gonzales, 424 F.3d 43 (9th Cir.2005), quoting H.R. Cong. Rep. No. 109-72, at 2873 (May 3, 2005).

23  As Petitioner is challenging her continued detention, not the order of removal, the Court has subject

24  matter jurisdiction over this action.

25         With respect to jurisdiction over the person, 28 U.S.C. § 2241(a) provides that writs of

26  habeas corpus may be granted by the district courts "within their respective jurisdictions." A writ of

27  habeas corpus operates not upon the prisoner, but upon the prisoner's custodian. Braden v. 30th

28  Judicial Circuit Court of Kentucky, 410 U.S. 484, 494-495 (1973). A petitioner filing a petition for

1  writ of habeas corpus under 28 U.S.C. § 2241 must file the petition in the judicial district of the

2  petitioner's custodian. Brown v. United States, 610 F.2d 672, 677 (9th Cir. 1990).  It is sufficient if

3  the custodian is within the territorial jurisdiction of the court at the time the petition is filed; transfer

4  of the petitioner thereafter does not defeat personal jurisdiction that has once been properly

5  established. Ahrens v. Clark, 335 U.S. 188, 193 (1948), *overruled on other grounds in* Braden v. 30th

6  Judicial Circuit Court of Kentucky, 410 U.S. at 193, *citing* Mitsuye Endo, 323 U.S. 283, 305 (1944);

7  Francis v. Rison, 894 F.2d 353, 354 (9th Cir. 1990).

8          Review of the petition shows that Petitioner is detained in the Kern County Lerdo Detention

9  Facility located in Bakersfield, California. Bakersfield is within the territorial jurisdiction of this

10  Court.

11  II.  Exhaustion of Administrative Remedies.

12          Exhaustion of administrative remedies before seeking relief from the federal courts is

13  required where Congress specifically mandates it; however, when Congress has not clearly required

14  exhaustion, the necessity of exhaustion is entrusted to sound judicial discretion. McCarthy v.

15  Madigan, 503 U.S. 140, 144 (1992) (holding exhaustion of a prison grievance procedure unnecessary

16  before a federal prisoner brought a Bivens action seeking only monetary damages, superseded by

17  statutory amendment as noted in Booth v. Churner, 532 U.S. 731, 738 (2001)). Even if exhaustion is

18  not mandated, judicially fashioned principles of exhaustion should be consistent with congressional

19  intent and the applicable statutory scheme. McCarthy v. Madigan, 503 U.S. at 144.

20          Petitioner has fully exhausted her administrative remedies. She has appealed to the Board of

21  Immigration Appeals, the highest administrative level.

22  III.  Authority to Detain Petitioner.

23          The parties contest which regulatory scheme governs Petitioner's current detention.

24  Respondent contends Petitioner is subject to a final order of removal and is therefore subject to the

25  detention and removal provisions of 8 U.S.C. § 1231(a)(2). Petitioner argues she is not subject to a

26  final order of removal because her petition for review is currently pending before the Ninth Circuit

27  Court of Appeals; thus, she is being detained pursuant to the pre-removal order detention statute set

28  forth in 8 U.S.C. § 1226. Petitioner's argument is correct.

1    Title 8 U.S.C. § 1231(a)(1) provides generally that except as otherwise provided in that

2    section, when an alien is ordered removed, the Attorney General shall remove the alien from the

3    United States within a period of ninety days, the "removal period." Section 1231(a)(2) provides that

4    "[d]uring the removal period, the Attorney General shall detain the alien." However, in

5    § 1231(a)(1)(B), the statute states the removal period does not begin to run until the date of a

6    reviewing court's final order "[i]f the removal order is judicially reviewed and if a court orders a stay

7    of the removal of the alien." Here, Petitioner has filed a petition for review in the Ninth Circuit Court

8    of Appeals, and the Ninth Circuit has ordered a stay of removal. For this reason, as Petitioner

9    correctly argues, the removal period has not yet commenced. The removal period cannot therefore be

10   suspended under § 1231(a)(1)(C) as Respondent argues, since it has not yet commenced.

11   Petitioner's detention therefore is controlled by 8 U.S.C. § 1226. Section 1226(a) states "an

12   alien may be arrested and detained pending a decision on whether the alien is to removed from the

13   United States." As stated by Petitioner, §§ 1226 (a) & (c) divide aliens in two separate categories,

14   those who have committed crimes as set forth in § 1226(c) and all others. If Petitioner is

15   "inadmissible by reason of having committed any offense covered in section 1182(a)(2) of this title,"

16   "is deportable by reason of having committed any offense covered in section 1227(a)(2)(A)(ii),

17   (A)(iii), (B), (C), or (D) of this title," "is deportable under section 1227(a)(2)(A)(I) of this title on the

18   basis of an offense for which the alien has been sentence to a term of imprisonment of at least 1

19   year," or "is inadmissible under section 1182(a)(3)(B) of this title or deportable under section

20   1227(a)(4)(B)," then the Attorney General must take her into custody. As noted by Petitioner, it is

21   arguable that she could be subject to mandatory detention pursuant to § 1226(c)(1)(B), because she is

22   deportable for having committed two prior acts of moral turpitude, to wit, petty theft. However,

23   § 1226(c)(1)(B) does not apply to her for another reason.

24   The mandatory custody provisions did not take effect until after the "Transition Period

25   Custody Rules" took effect on October 8, 1998. See Section 303(b)(2) of Illegal Immigration Reform

26   and Immigrant Responsibility Act of 1996, Division C of Pub. L. No. 104-208, 110 Stat. 3009-546,

27   3009-586 ("IIRIRA") (The provisions of section 236(c) of the Act "shall apply to individuals

28   released after" October 8, 1998, the date on which the Transition Period Custody Rules expired.). If

1   an alien was released from custody prior to that date, the alien could not be subject to mandatory

2   custody pursuant to the provisions in § 1226(c). See Matter of West, 2000 WL 1612317, 22 I. & N.

3   Dec. 1405 (BIA 2000) ("[O]nly aliens released after the expiration of the Transition Rules are

4   subject to the mandatory detention provisions of section 236(c) of the Act [8 U.S.C. § 1226(c)].");

5   Matter of Adeniji, 1999 WL 1100900, 22 I. & N. Dec. 1102 (BIA 1999). In this case, Petitioner

6   sustained her petty theft convictions in 1985 and 1993 and was released before the Transition Rules

7   expired. Accordingly, she cannot be mandatorily detained pursuant to § 1226(c).

8          Petitioner is therefore detained pursuant to § 1226(a). Section 1226(a) grants the Attorney

9   General discretion to determine whether an alien should be arrested and detained, or released on

10  bond or otherwise, pending removal proceedings. In this case, it was determined that Petitioner

11  would be detained without bond pending her removal from the country. With respect to judicial

12  review of this decision, section 1226(e) provides:

13         The Attorney General's discretionary judgment regarding the application of this section shall
           not be subject to review. No court may set aside any action or decision by the Attorney
14         General under this section regarding the detention or release of any alien or the grant,
           revocation, or denial of bond or parole.

15         Therefore, from this statute it appears that the Attorney General's decision to detain

16  Petitioner without granting release on bond is a "discretionary judgment" that is not reviewable by

17  this Court. In Demore v. Kim, the Supreme Court ruled that the Government could require that, as is

18  the case here, an alien be detained for the brief period necessary for her removal proceedings,

19  without providing an individualized determination as to whether she presents a flight risk, and thus

20  the detention of the alien, pursuant to the no-bail provision of the INA, does not violate her due

21  process rights under the Fifth Amendment. 538 U.S. 510 (2003).

22         Petitioner, however, contends that her detention is indefinite in nature and therefore violates

23  her constitutional rights. In Zadvydas v. Davis, in order to avoid serious doubts as to the

24  constitutionality of § 1231(a)(6), the Court interpreted it not to permit indefinite detention, but rather

25  to limit an alien's post-removal-period detention to a period reasonably necessary to bring about the

26  alien's removal from the United States. Id. at 688-89. The Court determined that aliens who had

27  been ordered removed had a liberty interest in being released subject to supervision which was

28

strong enough to raise a serious question as to whether, irrespective of the procedures used, the Constitution permits detention that is indefinite and potentially permanent. Id. at 696. Once removal is no longer reasonably foreseeable, continued detention is no longer authorized by the statute. Id. at 699. The authority of the government to detain is thus coextensive with the reasonable likelihood of removal, and the question of the extent of that authority is for the federal judiciary to decide in proceedings pursuant to 28 U.S.C. § 2241(c)(3). Id. In order to further uniform administration in the federal courts and to limit the frequency with which courts would be faced with difficult judgments regarding matters which are the subject of executive expertise, the Court adopted six months as a period within which detention is presumptively reasonable. Id. at 701. The Court instructed:

> After this [six]-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior post-removal confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink. This [six]-month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

Id.

In Nadarajah v. Gonzales, the Ninth Circuit concluded that, consistent with Zadvydas, the general immigration statutes do not authorize the Attorney General to incarcerate detainees for an indefinite period. 443 F.3d 1069, 1078 (9th Cir.2006). Rather, the same presumptively reasonable six-month period applies, and "once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." Id., quoting Zadvydas, 533 U.S. at 701.

Applying these concepts to this case, it cannot be concluded that there is no significant likelihood of removal in the reasonably foreseeable future. First, Petitioner has been detained for 10 months at this point. This is longer than the presumptively reasonable six-month period but far shorter than the nearly five-year detention in Nadarajah, 443 F.3d at 1080, or the two year and eight month delay in Tijani v. Willis, 430 F.3d 1241, 1242 (9th Cir.2005). Petitioner has already been found removable by the IJ, and the reason Petitioner is still being detained is not due to the Attorney

1  General's delay but due to her appeal to the Ninth Circuit. Petitioner, as a native and citizen of

2  Mexico, would promptly be removed if not for her petition to the Ninth Circuit. As stated by the

3  Seventh Circuit in an analogous case:

> An alien in Parra's position can withdraw his defense of the removal proceeding and return to his native land, thus ending his detention immediately. He has the keys in his pocket. A criminal alien who insists on postponing the inevitable has no constitutional right to remain at large during the ensuing delay, and the United States has a powerful interest in maintaining the detention in order to ensure that removal actually occurs.

7  Parra v. Perryman, 172 F.3d 954, 958 (7th Cir.1999)

8       This is also the case here. Petitioner complains she is being detained for an indefinite period,

9  but the period is not indefinite. As in Parra, she has the keys to release in her pocket and can be

10  returned to Mexico without delay should she choose. In addition, as the parties have stated, the

11  petition for review is currently pending before the Ninth Circuit. See Garcia-Garcia, et al., v.

12  Mukasey, docket no. 07-70323. Although the Government's response to Petitioner's brief was

13  initially due on November 23, 2007, the Government requested an extension of time. Id. The

14  Government's request for additional time *went unopposed by Petitioner* and was granted by the

15  Ninth Circuit on November 16, 2007. Id. The response is currently due on January 22, 2008, with an

16  optional reply by Petitioner due fourteen days later. Id.

17       In light of these facts, Petitioner has not demonstrated that there is no significant likelihood

18  of removal in the foreseeable future, and her detention is not indefinite. The petition should be

19  denied, because Petitioner's current detention is lawful and authorized by statute.

20                                    **RECOMMENDATION**

21       The Court hereby RECOMMENDS that the petition for writ of habeas corpus be DENIED

22  and the Clerk of Court be DIRECTED to enter judgment.

23       These Findings and Recommendations are submitted to the Honorable Oliver W. Wanger,

24  United States District Judge, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 72-

25  304 of the Local Rules of Practice for the United States District Court, Eastern District of California.

26  Within thirty (30) days after being served with a copy, any party may file written objections with the

27  Court and serve a copy on all parties. Such a document should be captioned "Objections to

28  Magistrate Judge's Findings and Recommendations." Replies to objections, if any, must be filed

1   within ten (10) court days after service of the objections. The Court will then review the Magistrate

2   Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C). The parties are advised that failure to file

3   objections within the specified time may waive the right to appeal the District Court's order.

4   Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

5   IT IS SO ORDERED.

6   **Dated:    December 3, 2007                      /s/ Sandra M. Snyder**
                                          UNITED STATES MAGISTRATE JUDGE